Jose Luis **HERNANDEZ** and Carmen **Hernandez, Appellants,**

v.

**KOCH MACHINERY COMPANY, Appellee.**

No. 01–98–00768–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Feb. 24, 2000.

Rehearing Overruled April 27, 2000.

---

Michael Kerensky, Houston, for appellee.

Evelyn Ailts Derrington, Michael Phillips, Houston, for appellants.

Panel consists of Justices O'CONNOR, HEDGES, and PRICE.*

## OPINION

FRANK C. PRICE, Justice (Assigned).

Appellants, Jose Luis Hernandez and his wife, Carmen Hernandez (collectively Hernandez), appeal the granting of the motion for summary judgment by appellee, Koch Machinery Company (Koch), that was based on the statute of repose and "no evidence" that the machine was unreasonably dangerous. In the event there is an adverse ruling on the statute of repose, Koch appeals the trial court's decision to grant Hernandez's bill of review. We reverse the granting of Koch's motion for summary judgment, reverse the granting of Hernandez's motion for partial summary judgment, and hold Hernandez was not entitled to bill of review relief.

## FACTUAL SUMMARY

In 1983, Hernandez's arm was severed while he was working on a steel slitter. This machine cut raw rolled sheet metal into specified widths and lengths and then rolled the freshly cut metal. Hernandez alleged there was a design defect in the re-rolling process that caused his injury. His petition was filed against the Cincinnati–Forte Company and Koch, based on theories of recovery for products liability, negligence, and breach of warranty.

In 1969, the Cincinnati–Forte Company, a subsidiary corporation of Cincinnati Incorporated, sold a slitting line machine to Steiner Realty Company. The machine was constructed and installed by Cincinnati–Forte at the Schill Steel plant in Houston. This slitting line was an improvement installed at the plant to process and cut sheet metal. Koch is a Texas corporation that acted as Cincinnati–Forte's agent and marketer of the slitting line in Texas. Koch, representing Cincinnati–Forte, would actively pursue potential buyers and then put the customers in contact with Cincinnati–Forte. Koch received a finders' fee for each sale resulting from a contact it established. Koch did not participate in the negotiations between Cincinnati–Forte and Steiner Realty Company for the sale of the slitting line.

There is no evidence of any defect or problem with the slitting line at the time of the sale in 1969, or for the next 13 years. James Philip Davis, the chairman of the board of Schill Steel Company and President of Steiner, testified that in 1978 or 1979, the slitting line was purchased by a machinery equipment dealer from Detroit who contracted with someone else to disassemble and reconstruct the slitter. The slitter was moved to another warehouse at Schill Steel, which ultimately was the site of the injury in question.

## PROCEDURAL HISTORY

Judge William Powell rendered summary judgment in favor of Cincinnati Incorporated based on the statute of repose. Hernandez appealed the judgment, and in an unpublished opinion, the Fourteenth Court of Appeals dismissed the appeal,

---

* The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

holding that the judgment was not final because it did not dispose of all the parties. *Hernandez v. Cincinnati, Inc.*, No. A14–88–00274–CV (Tex.App.—Houston [14th Dist.] Dec.15, 1988, writ granted) (not designated for publication), 1988 WL 133265. The Texas Supreme Court, in another unpublished opinion, agreed the judgment was not final, but remanded the case back to the trial court, holding that the court of appeals improperly dismissed the appeal. *Cincinnati, Inc. v. Hernandez*, 32 Tex. Sup.Ct. J. 463 (June 14, 1989) (not designated for publication.) On remand, Judge Powell severed the cause of action against Cincinnati Incorporated, and the summary judgment became final on April 6, 1990.

On November 6, 1990, the trial court sent notice of its intent to dismiss the remaining litigation for want of prosecution. Thirty days later, the case was dismissed.

On March 26, 1991, Hernandez filed a motion to reinstate, which the trial court granted on April 5, 1991. Koch opposed the motion and order, contending the trial court no longer had jurisdiction over the matter.

In October, 1991, Koch filed its motion for summary judgment based on the statute of repose. In addition, Koch argued it could not be liable under strict products liability, because it never placed the improvement into the stream of commerce. Koch further asserted it did not design, assemble, or manufacture the steel slitter; therefore, no duty could be imposed. With respect to the warranty cause of action, Koch stated it made no actionable misrepresentations. The trial court never expressly ruled on this motion.

The trial court dismissed the Hernandez's personal injury lawsuit on December 15, 1993, because it found, in light of *Levit v. Adams*, 850 S.W.2d 469, 470 (Tex.1993), it never had jurisdiction to reinstate the case. On March 9, 1994, Hernandez filed a bill of review. In the bill of review, Hernandez said he did not receive notice that his personal injury lawsuit was going to be dismissed and that his case had been dismissed. He further asserted the dismissal was not due to any intentional misconduct or conscious indifference on his part, but was actually an official mistake or accident. Finally, he said the reinstatement of the case, more than 10 years after the original injury, would not result in any delay or injury to Koch. The same three theories of recovery for strict products liability, negligence, and breach of warranty were alleged on the merits.

After the bill of review was filed, Koch moved for summary judgment on three additional grounds: (1) the statute of repose barred Hernandez's claims in their entirety; (2) because Hernandez's own negligence contributed to the earlier dismissal of his lawsuit, he was barred from seeking bill of review relief; and (3) there was no evidence Koch's negligence proximately caused Hernandez's injuries.

Hernandez filed his own motion for summary judgment contending, as a matter of law, he established his right to seek bill of review relief. In a second motion, he added that his lawsuit was not barred by the statute of repose. Upon Hernandez's motion, the court entered an order that it would consider all the "contents of the court's files for the purpose of determining the summary judgment motions that are pending before the court."

The trial court granted Hernandez's motion for partial summary judgment, holding he was entitled to pursue bill of review relief. In addition, the trial court granted Koch's motion for summary judgment, holding the statute of repose barred Hernandez's claims in their entirety. Hernandez appeals this adverse ruling, and if we reverse on that issue, Koch, conditionally, appeals the ruling on the bill of review.

## SUMMARY JUDGMENT STANDARD OF REVIEW

A party moving for summary judgment has the burden of proving there is no genuine issue of material fact and the mov-

ant is entitled to judgment as a matter of law. *Nixon v. Mr. Property Mgmt. Co., Inc.,* 690 S.W.2d 546, 548 (Tex.1985). When deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true. *Id.* 548–49. Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *Id.*

When a defendant moves for summary judgment, it must either: (1) disprove at least one element of the plaintiff's cause of action; or (2) plead and conclusively establish each essential element of its affirmative defense, thereby rebutting the plaintiff's cause of action. *See Cathey v. Booth,* 900 S.W.2d 339, 341 (Tex.1995).

## STATUTE OF REPOSE

■ In point of error one, Hernandez argues it was error for the trial court to render summary judgment based on the statute of repose.

The statute of repose requires a party to sue:

> ... a person who constructs or repairs an improvement to real property not later than ten years after the substantial completion of the improvement in an action arising out of a defective or unsafe condition of the real property or a deficiency in the construction or repair of the improvement.

*See* TEX. CIV. PRAC. & REM.CODE Ann. § 16.009(a) (Vernon 1986).

■ The purpose of the statute of repose is to protect individuals and corporations who have no control over the real estate improvement and have no authority to go onto the premises to inspect the improvement for unsafe conditions, to ensure that it is being used for the purpose for which it was designed, or to check for any defective alterations. *Dubin v. Carrier Corp.,* 731 S.W.2d 651, 654 (Tex.App.— Houston [1st Dist.] 1987, no writ). Unlike traditional limitations provisions, which begin running upon accrual of a cause of action, a statute of repose runs from a specified date without regard to accrual of any cause of action. *Trinity River Authority v. URS Consultants, Inc.-Texas,* 889 S.W.2d 259, 261 (Tex.1994).

Statutes of repose differ from traditional limitations in that they potentially cut off a right of action before it accrues. *Id.* at 263. As to real estate improvements, however, where a claim may arise many years after the designer's involvement with the project has ceased, the statute must operate in this manner if it is to serve its purpose. *Id.* The public purpose of limitations—protecting defendants from having to defend stale claims—should be served even though some meritorious claims might be barred. *Id.* at 264.

All parties agree the slitting line was an improvement to the realty. As a result, the only real question before this Court on this issue is whether Koch is entitled to protection under this statute.

Hernandez relies almost exclusively on the Texas Supreme Court's decision in *Sonnier v. Chisholm–Ryder Co., Inc.,* 909 S.W.2d 475 (Tex.1995). In *Sonnier,* Chisolm–Ryder manufactured a tomato chopper for use in a commercial cannery at the Sugar Land Central Unit of the Texas Department of Corrections (now, Texas Department of Criminal Justice). *Id.* at 477. Twenty years later, the Sugar Land Central Unit stopped its tomato processing operations, and the Texas Department of Corrections moved the machine to the Ramsey Unit where it was installed in the same manner as part of a different production line. *Id.* Five years after the move, Sonnier had a portion of his arm severed while inspecting the machine. *Id.* A diversity action in federal court was defeated when a jury found the tomato chopper was an "improvement," and the trial court entered a take nothing judgment. *Id.* The United States Court of Appeals for the Fifth Circuit certified the following question for the Texas Supreme Court:

> Whether a person or entity that manufactures a tomato chopping machine

"constructs ... an improvement to real property" for the purpose of qualifying for the protection of the Statute of Repose ... when that machine is originally installed by another party on real estate, then removed and reinstalled by such other party on real estate at a different location.

*Id.* The Court explained the statute of repose was not intended to grant repose to manufacturers in product liability suits, but only to preclude suits against those in the construction industry that annex personalty to realty. *Id.* at 479. There can be no improvement without annexation to realty, and until personalty is annexed to realty, it, by definition, cannot be an improvement. *Id.* The act was intended to protect those who actually alter the realty by constructing additions or annexing personalty to it, not to protect those who do no more than manufacture personalty that is later transformed by third parties into an improvement. *Id.* at 482. The court clarified that

> The statute of repose governing the annexation at Sugar Land is not revivified by any activity occurring at another construction site. The subsequent annexation at Ramsey created a new 10–year repose period protecting those who annexed the personalty to the realty there, assuming the facts support a finding that the chopper was an improvement at Ramsey.

*Id.* at 483.

Hernandez argues it is undisputed that Koch did not participate in the construction of the steel slitter, and Jack E. Koch, the owner of Koch, even testified he "never saw the machine until it was in the process of being installed and erected at the job site." Therefore, Koch is not a member of the class of businesses that can rely upon the statute of repose as a defense. Hernandez maintains the steel slitter was moved and re-installed in the location where Hernandez was hurt less than 10 years before he lost his arm. Hernandez contends that because Koch admits it

had no involvement in the reinstallation of the steel slitter in the location where Hernandez was hurt, the statute of repose is not a defense for Koch. We agree.

Koch directs this Court to three cases which support its position. The first case, *Jackson v. Coldspring Terrace Property Owners Ass'n*, 939 S.W.2d 762, 763 (Tex. App.—Houston [14th Dist.] 1997, writ denied), involves allegations that the pool at Coldspring Terrace was negligently designed and did not have sufficient depth markings. The suit was brought by Robert Jackson after he was rendered a quadriplegic from diving in the pool. *Id.* The pool was constructed by Sam Gardner and his construction company in 1969. *Id.* Gardner was a licensee/franchisee of Blue Haven Pools ("BH") and was given the right to sell BH pools and equipment. *Id.* BH did not participate in the actual construction of the pools. *Id.* Jackson sued numerous defendants alleging causes of action based on the strict liability theories of negligent design, manufacture and marketing, and breach of implied warranties. *Id.* at 764. One such defendant, KDI, was said to be a successor-in-interest to BH. *Id.* Jackson tried to obtain a finding that KDI was liable for BH and Gardner's alleged negligence. *Id.* KDI asserted that it had nothing to do with the design and construction of the Coldspring pool and that Jackson's claims were barred by the statute of repose. *Id.*

Fifteen years had elapsed between the construction of the Coldspring pool and Jackson's injuries. *Id.* at 768. Seventeen years had elapsed between the construction of the Coldspring pool and Jackson bringing the action. *Id.* If the statute of repose had been applicable, it would have barred Jackson's cause of action. *Id.*

Jackson maintained the statute did not apply to KDI, because it did not actually construct the pool. *Id.* In *Sonnier*, the supreme court held that the statute of repose does not "protect those who do no more than manufacture personalty that is later transformed by third parties into an

improvement." *Sonnier*, 909 S.W.2d at 478. In *Jackson*, there is no question Gardner was a manufacturer that constructed an improvement to real property, so Gardner would clearly fall within the statute's protection. *Jackson*, 939 S.W.2d at 768. What about KDI? KDI presented summary judgment evidence that BH did not participate in the design or construction of the pools. *Id.* Because Gardner was wholly responsible for any defects in design and construction of the pools, KDI and BH's liability, if any, would arise from the franchiser holding itself out as the manufacturer of the pool. *Id.* Gardner was the actual manufacturer of the pool; therefore, any defenses available to him are available to KDI and BH. *Id.*

Koch argues it is in the same position as BH. It marketed Cincinnati–Forte's product, but was not involved in the design or construction. Any defenses available to Cincinnati–Forte as the actual manufacturer of the slitting line, are also available to Koch. We disagree with Koch's argument and the holding in *Jackson.* BH did not participate in the actual annexation of the pool and therefore, should not have been afforded statute of repose protection. *See Sonnier*, 909 S.W.2d at 482.

Koch also relies on two appellate opinions from the same case. The Dubins' daughter died of carbon monoxide gas emitted from a wall heater. *Dubin*, 731 S.W.2d at 652. ("*Dubin I* "). They sued the company which designed and manufactured the heater (Williams Furnace), the corporation which marketed and distributed the heater (Carrier Corp.), the apartment owners, and the retail seller of the smoke alarm (Sears). *Id.* ("*Dubin I* "). Williams Furnace and Carrier Corp. filed motions for summary judgment asserting the statute of repose barred the actions against them. *Id.* at 653. The court concluded Williams Furnace and Carrier Corp. must conclusively establish the heater that they had designed and manufactured was installed in the decedent's apart-

ment more than 10 years prior to the commencement of the action and that the heater constituted an "improvement" to real property. *Id.* The court had insufficient evidence before it to determine when the heater was installed, and it remanded the case for resolution of that issue. *Id.* at 654. It did, however, address whether Williams Furnace and Carrier Corp. were within the class afforded protection by the statute of repose.

Whether Carrier Corp. was a supplier, or was a "person performing or furnishing construction or repair" to the apartments, turned on how Carrier Corp. *functioned* in that particular instance. *Id.* Although Carrier Corp. did not design, inspect, or install the improvement, the court concluded Carrier Corp. *functioned* as a manufacturer of an improvement to real property and was protected by the statute of repose. *Id.* at 655.

Carrier Corp.'s motion for summary judgment was granted on remand. The appeal of that summary judgment can be found in *"Dubin II." Dubin v. Carrier Corp.*, 798 S.W.2d 1 (Tex.App.—Houston [14th Dist.] 1989, writ dism'd by agr.). The Fourteenth Court of Appeals revisited the question whether the statute of repose applied to Williams Furnace.[1] *Id.* at 2. It determined Williams Furnace was more than a mere materialman, because it did more than simply supply parts. *Id.* The court also addressed the alleged fact issue over the expiration of the requisite 10 years. *Id.* at 3. Williams Furnace and Carrier Corp. adduced evidence they had nothing to do with the heater during the more than 10 years following its installation. *Id.* That a third party might have altered the heat exchanger would in no way recommence the running of the statute against Williams Furnace and Carrier Corp. *Id.*

We decline to follow either *Dubin* opinion, because each was issued before *Sonnier*, and they relied on *Ellerbe v. Otis Ele-*

---

1. The *Dubin II* court regarded *Dubin I's* clas-      sification of Carrier as the law of the case.

*vator Co.,* 618 S.W.2d 870 (Tex.Civ.App.— Houston [1st Dist.] 1981, writ ref'd n.r.e), a case which was specifically disapproved in *Sonnier. See Sonnier,* 909 S.W.2d at 479. In addition, neither Carrier Corp. nor Williams Furnace participated in the actual installation of the heater/improvement; therefore, they should not be afforded statute of repose protection.

█ We hold Koch was not entitled to statute of repose protection, because it was not sufficiently related to the actual attachment of the slitting line to the property. The attachment to the realty is what actually makes the slitting line an "improvement," and in *Sonnier,* the supreme court held that the statute of repose does not "protect those who do no more than manufacture personalty that is later transformed by third parties into an improvement." *Sonnier,* 909 S.W.2d at 482. It stands to reason that the statute of repose does not extend to protect those who market or broker the deal that is later transformed by third parties into an improvement. *See id.*

We hold the statute of repose does not protect Koch.

We sustain point of error one.

### SUMMARY JUDGMENT ORDER

█ In Hernandez's second point of error, Koch argues, in the event we hold that the statute of repose does not protect Koch, as we have, then we should turn to the merits of the case.

On April 28, 1998, the trial court signed an order on the motions for summary judgment stating:

> . . . it is further
>
> ORDERED, ADJUDGED, and DECREED that [Hernandez's] Motion for Partial Summary Judgment is in all things GRANTED; it is further
>
> ORDERED, ADJUDGED, and DECREED that [Koch's] Motion for Sum-

mary Judgment in connection with the Statute of Repose is hereby GRANTED;[2] it is further

> ORDERED, ADJUDGED AND DECREED that [Koch's] motion for summary judgment in connection with the issues involving the Bill of Review is hereby DENIED.

Both parties superficially briefed the merits of Hernandez's case, but it is the position of this Court that the merits were not ruled on. There is no Mother Hubbard clause in the order. Hernandez and Koch thoroughly briefed the statute of repose, but provided limited briefing on the merits of the case.

The Texas Supreme Court has held:

> courts of appeals *should* consider all summary judgment grounds the trial court rules on and the movant preserves for appellate review that are necessary for final disposition of the appeal when reviewing a summary judgment. We further conclude that the appellate court *may* consider other grounds that the movant preserved for review and trial court did not rule on in the interest of judicial economy.

*Cincinnati Life Ins. Co. v. Cates,* 927 S.W.2d 623, 626 (Tex.1996), (emphasis added). In *Cincinnati Life,* the Texas Supreme Court remanded the case to the court of appeals because the parties did not provide full briefing. *Id.* We refuse to rule on Hernandez's point of error two pertaining to the merits of this case, because the parties have not fully briefed the merits.

### BILL OF REVIEW

Koch filed an appeal in the event we sustained Hernandez's point of error on the statute of repose. We have done so; therefore, we shall now consider Koch's appeal.

---

**2.** The actual order says "DENIED", but it was marked through, and the trial court

handwrote "GRANTED" and initialed the change.

## Jurisdiction

■ Relying on *Philbrook v. Berry*, 683 S.W.2d 378 (Tex.1985), Koch contends this Court lacks jurisdiction over this appeal, because Hernandez filed his motion for new trial using the wrong case number.

*Philbrook* has been distinguished, explained, and questioned on several occasions. In *Blankenship v. Robins*, 878 S.W.2d 138, 139 (Tex.1994), the Texas Supreme Court held the decisions of the courts of appeals should turn on substance rather than procedural technicality. *Cronen v. County Storage Lot*, 831 S.W.2d 895, 896 n. 3 (Tex.App.—Houston [1st Dist.] 1992, no writ). Furthermore, Hernandez's actions constituted a bona fide attempt to invoke the appellate court jurisdiction. *See Blankenship*, 878 S.W.2d at 139.

We hold we have jurisdiction over this matter.

## Bill of Review—Procedural Background

On March 9, 1994, Hernandez brought this bill of review in an effort to set aside the dismissal of his lawsuit. The basis of the bill was that Hernandez's attorney was not notified of the dismissal. Koch answered the bill of review by denying Hernandez's negligence and products liability claims, and Koch additionally raised the defense of statute of repose.

On December 29, 1997, Koch filed a motion for summary judgment asserting: (1) Hernandez could not prevail on his bill of review, because his own negligence contributed to the dismissal; (2) on the merits, Koch raised the statute of repose defense; and (3) also on the merits, Koch made a Rule 166(a)(i) argument that it was not negligent and its negligence did not proximately cause Hernandez's injuries.

Hernandez filed a cross-motion for partial summary judgment on the statute of repose and a supplemental motion for par-

tial summary judgment on the bill of review.

The trial court granted Koch's motion for summary judgment on the statute of repose, but denied it with respect to the bill of review. The trial court granted Hernandez's motion for partial summary judgment on the bill of review.

## Factual Background on Bill of Review

The record shows on July 17, 1984, Michael Kerensky filed the original petition, but John Leach was designated the attorney of record for Hernandez from 1988 until April 1991.[3] Leach was an associate with the law firm of the Law Offices of John M. O'Quinn & Associates.[4] Between 1988 and 1990, Leach left the law firm and worked as a salaried employee for another firm, but Kerensky kept Hernandez's case. In January of 1990, Leach left that firm and formed a partnership with another attorney. They later moved their offices to One West Loop South, Suite 100, Houston, Texas 77027. He occupied that address from January 1, 1990 until May 1, 1991.

Leach did not arrange to have a substitution of counsel or a designation of attorney of record filed when he left the Law Offices of John M. O'Quinn & Associates, and that firm did not notify the district clerk's office that another attorney was now acting as attorney of record. As a result, from April 25, 1988 until April 9, 1991, Leach was shown as Hernandez's attorney of record. In the intervening years, Leach notified the district clerk of his various address changes, and as of February 13, 1990, his mail for all cases in which he was listed as attorney of record was sent to the West Loop South address. Because the Law Offices of John M. O'Quinn & Associates did not notify the district clerk of the new attorney change,

---

**3.** On April 9, 1991, Kerensky filed a designation of attorney of record, naming himself as the attorney of record for Hernandez, in lieu of Leach.

**4.** The formal title of the law firm was Law Offices of John M. O'Quinn & Associates when Leach left. The name was later changed to O'Quinn, Kerensky & McAninch.

the clerk continued to treat Leach as the attorney of record.

In April of 1990, Leach received a post-card from the trial court indicating the Hernandez case was dismissed for want of prosecution. Leach notified Kerensky's office regarding the notice of dismissal. On April 2, 1990, Kerensky filed a motion to retain the case, but did not notify the clerk that the postcard was sent to the wrong address or that he was actually the attorney in charge.

On November 6, 1990, the 80th District Court sent notification to all attorneys of record that the case would be dismissed for want of prosecution within 30 days. The dismissal notification was sent to Leach's West Loop South office. Thirty days later, the court dismissed the cause for want of prosecution.

On March 26, 1991, Hernandez filed a motion to reinstate the dismissal of December 7, 1990. Despite Koch's objection, the trial court reinstated the cause on April 5, 1991. Following the Texas Supreme Court's decision in *Levit v. Adams*, 850 S.W.2d 469 (Tex.1993), the trial court dismissed the case for want of jurisdiction on December 15, 1993. In response, Hernandez filed this bill of review.

On December 29, 1997, Koch filed its second amended motion for summary judgment. Koch argued in its motion: (1) Hernandez could not assert and there was no evidence he was prevented from making his claims in the underlying lawsuit by any fraud, accident or mistake of Koch or based on mistake or error of the court personnel in the execution of official duties; (2) the dismissal of the underlying suit was the result of Hernandez's failure to prosecute; and (3) Hernandez did not act diligently, and there is no evidence he acted diligently to preserve his rights, and the dismissal was mixed with his own negligence. Alternatively, Koch argued the statute of repose time-barred all Hernan-

dez's claims and there was no evidence Koch's negligence, if any, proximately caused Hernandez's injuries.

As previously stated, the trial court granted Hernandez's motion for partial summary judgment allowing him to reinstate his case and proceed with a trial on the merits, and it granted Koch's motion for summary judgment on the statute of repose which disposed of all claims before the court. We have already reversed the trial court's decision on the statute of repose, so we shall now consider the propriety of the granting of Hernandez's motion for partial summary judgment relating to the bill of review.

## Bill of Review

A bill of review is an independent, equitable action brought by a party to a former action seeking to set aside a judgment no longer appealable or subject to motion for new trial. *Caldwell v. Barnes,* 975 S.W.2d 535, 537 (Tex.1998); *Min v. Avila,* 991 S.W.2d 495, 499 (Tex. App.—Houston [1st Dist.] 1999, n.p.h.). Because it is an equitable remedy, the bill is available only when a party has demonstrated due diligence and shown, through no fault of its own, that no other legal remedy was available. *Caldwell,* 975 S.W.2d at 537–38.

To succeed by bill of review, the petitioner must ordinarily allege and prove three elements: (1) a meritorious claim or defense; (2) that he was prevented from asserting by the fraud, accident, or wrongful act of his opponent[5] or a court official in the exercise of official duties; (3) unmixed with any fault or negligence of his own. *Caldwell,* 975 S.W.2d at 537; *Nichols v. Jack Eckerd Corp.,* 908 S.W.2d 5, 8 (Tex.App.—Houston [1st Dist.] 1995, no writ).

## Official Mistake/Misinformation

Before a lawsuit may be dismissed for want of prosecution, the trial

---

5. Hernandez does not allege Koch or its attorneys engaged in conduct which would be characterized as fraud, accident, or wrongful act.

court must mail notice of its intention to dismiss and the date and place of the dismissal hearing to each attorney of record to the address shown on the docket or in the papers on file.[6] TEX.R.CIV.P. 165a(1); *Osterloh v. Ohio Decorative Products, Inc.*, 881 S.W.2d 580, 582 (Tex.App.—Houston [1st Dist.] 1994, no writ). As a result, there are actually two notices sent—one to notify the parties of the intent to dismiss and one to notify the parties the case was dismissed. Hernandez asserts that *he* did not receive either.

Under the second element of the bill of review, Hernandez contends that the court personnel provided him with misinformation by not sending the notices to the address shown *in the papers on file* with the trial court. He argues that because Kerensky's address was indicated on the transmittal letters and other documents in the court's file, the officers of the court did not comply with TEX.CIV.P. 165a by mailing the notices to Leach, his previous attorney, despite the fact Leach was listed as the attorney of record. *See Osterloh*, 881 S.W.2d at 582.

In *Osterloh*, we held the clerk erred in mailing the notice of intent to dismiss to the attorney's previous address, thus satisfying the second element of the test for a bill of review. *Id.* The clerk's action was, however, a mistake, not misinformation.

Hernandez maintains he is relieved from proving the traditional requirements for a bill of review because a bill of review petitioner, who is prevented from filing a motion to reinstate due to the failure of the court clerk to properly notify the party that a dismissal was obtained, is subject to a "less onerous burden." We disagree.

In *Petro–Chemical Transport, Inc. v. Carroll*, 514 S.W.2d 240, 244 (Tex.1974), the Texas Supreme Court held that, in a bill of review, the clerk's failure to send a notice is treated the same as if the clerk provided misinformation.[7] Earlier supreme court cases made a distinction between the two and held that if the clerk provided misinformation, the movant was held to a less onerous burden. *Hanks v. Rosser*, 378 S.W.2d 31, 35 (Tex.1964). Thus, under *Petro,* Hernandez was required to show the need for the bill of review was through no negligence of his own. *Petro–Chemical Transport, Inc.*, 514 S.W.2d at 244. The "less onerous burden" only relates to the second element of the bill of review requirements. *See Baker v. Goldsmith*, 582 S.W.2d 404, 407 (Tex.1979). In *Petro*, the Texas Supreme Court clearly mandated:

> No rule of law is better settled than the one that a court of equity will not set aside a final judgment in a former action when the failure to have a full and fair presentation of the case therein resulted from the negligence, inadvertence or mistake either of the party seeking relief or his counsel.

*Petro–Chemical Transport, Inc.*, 514 S.W.2d at 246. This is still the law today.

### Hernandez's Lack of Negligence

In point one, Koch argues the trial court erred in denying Koch's motion for summary judgment and granting Hernandez's motion for partial summary judgment granting his bill of review, because Hernandez did not prove the third prong, that being that his own negligence did not contribute to the earlier dismissal.

**6.** Notice acquired by an attorney after the termination of the attorney-client relationship will not be imputed to the former client. *Cannon v. ICO Tubular Services, Inc.*, 905 S.W.2d 380, 387 (Tex.App.—Houston [1st Dist.] 1995, no writ).

**7.** To the extent this Court has previously implied the third bill of review element need not be reached when there is misinformation as

opposed to mistake, we hold *Petro* renders the difference immaterial. The movant still must prove his negligence did not cause the delay. We distinguish this case from *Rund v. Trans East, Inc.*, 824 S.W.2d 713, 717 (Tex.App.—Houston [1st Dist.] 1992, writ denied) and *Buckler v. Tate*, 572 S.W.2d 562 (Tex.Civ.App.—Houston [1st Dist.] 1978, no writ).

It is generally held that a party to a lawsuit is charged with notice that the suit may be dismissed for want of prosecution when there is inaction for a long period of time. *Lowe v. U.S. Shoe Corp.,* 849 S.W.2d 888, 891 (Tex.App.—Houston [14th Dist.] 1993, writ denied). Set forth below is a timetable of events:

| Date | Event |
|---|---|
| 7/17/84 | Kerensky filed plaintiffs' original petition |
| 3/23/88 | Leach designated as attorney in charge for Hernandez |
| 3/25/88 | Again, Leach designated as attorney in charge for Hernandez |
| 12/88 | Leach left law firm; did not take Hernandez case with him, but remained as attorney in charge in the clerk's record |
| 2/13/90 | Leach notified clerk of change-of-address |
| 4/90 | Leach received postcard from court indicating Hernandez was dismissed for want of prosecution and told Kerensky's office |
| 4/2/90 | Kerensky filed motion to retain, but did not notify clerk of designation of lead counsel |
| 11/6/90 | Trial court sent notice that case would be submitted to trial court for dismissal on 12/7/90; notice sent to Leach at address given to clerk on 2/13/90 |
| 12/7/90 | Trial court dismissed case; notice sent to all attorneys of record |
| 3/26/91 | Kerensky filed motion to reinstate |
| 4/5/91 | Trial court granted motion to reinstate |
| 4/8/91 | Kerensky filed designation of attorney of record—2½ years after Leach left his firm |
| 12/15/93 | Trial court dismissed the case based on *Levit v. Adams* 3/9/94 Hernandez filed his bill of review |
| 4/7/95 | Hernandez's Answers to Koch's Interrogatories list Leach and Kerensky as working together at same address |

4/29/98    Trial court granted Hernandez's
           motion for partial summary judg-
           ment

Hernandez had the burden of setting forth factually and with particularity that his or his counsel's negligence did not cause the delay. *See Cannon v. ICO Tubular Services, Inc.*, 905 S.W.2d 380, 384 (Tex.App.—Houston [1st Dist.] 1995, no writ).

His motion for partial summary judgment applied the wrong standard. It argued he simply needed to prove the dismissal was not intentional or the result of conscious indifference. In fact, Hernandez stated in his own motion, "Even when viewed in a light most favorable to [Koch], all the criticisms of Plaintiffs' counsel amount to no more than a mistake or simple negligence." This admission was verified by Kerensky who stated in his affidavit he had "read the foregoing Motion for Partial Summary Judgment and that the information contained therein is within [my] personal knowledge and is true and correct." This admission alone defeats his summary judgment.

We sustain Koch's point one and reverse the trial court's decision granting Hernandez's motion for partial summary judgment.

Having found Koch established, as a matter of law, Hernandez did not comply with the standard that is applicable in this case, it is not necessary for us to address Koch's additional points of error pertaining to (1) an alternative finding that there is a fact question as to whether there was official mistake, thus precluding the trial court's rendition of partial summary judgment; or (2) there was no evidence that Koch's negligence, if any, proximately caused the injuries in question. We,

therefore, do not rule on Koch's points two and three.

## CONCLUSION

We reverse the trial court and hold Koch was not entitled to statute of repose protection, because it was not involved in the actual attachment of the improvement to realty. In addition, we reverse the trial court and hold Hernandez was not entitled to partial summary judgment, because he did not prove the proper bill of review elements. There was no proof his own negligence did not cause the dismissal of his case, and in fact, he admitted the dismissal was the result of mistake or simple negligence. Hernandez's case was improperly reinstated.

A majority of the justices of the Court voted to consider the case *en banc,* and a majority of the justices voted to distinguish *Rund v. Trans. East, Inc.*, 824 S.W.2d 713 (Tex.App.—Houston [1st Dist.] 1992, writ denied) and *Buckler v. Tate,* 572 S.W.2d 562 (Tex.Civ.App.—Houston [1st Dist.] 1978, no writ), as set forth in the opinion above.