Sandra **VEGA**, Martha Vega, Maria Lopez, Luis Lopez, and Monica Moreno, Individually and as Administrator of the Estate of Guadalupe Rodriguez, Deceased, Plaintiffs,

v.

**UNITED STATES of America,** Defendant.

No. EP–05–CV–420–KC.

United States District Court, W.D. Texas, El Paso Division.

April 5, 2007.

James F. Scherr, Michael Rudy Wyatt, Scherr & Legate, PLLC, El Paso, TX, for Plaintiffs.

Daniel M. Castillo, U.S. Attorney's Office, Austin, TX, Harold E. Brown, Jr., Assistant U.S. Attorney, James W. Jennings, Jr., U.S. Attorney's Office, San Antonio, TX, for Defendant.

### ORDER

KATHLEEN CARDONE, District Judge.

On this day, the Court considered Defendant United States of America's "Motion to Dismiss or, Alternatively, Motion for Summary Judgment" ("Motion"). For the reasons set forth herein, Defendant's Motion is **GRANTED** in part and **DENIED** in part.

## I. BACKGROUND

In 1972, the City of El Paso and the United States entered into an agreement ("Agreement") to cooperate on a flood control project ("Project"). Def. Ex. 1 App. B. The Project includes the Buena Vista Diversion Channel ("Channel") which was built between August 1978 and October 1980. Def.'s Ex. 1 at 8. Section 1(c) of the Agreement specifies that "the City will maintain and operate all the works after completion in accordance with regulations prescribed by the Secretary of Army." Def.'s Ex 1 App. B., Sec. 2, p. 3.

In addition to the Agreement, there is also an "Operations and Maintenance Manual" ("Manual") that relates to the construction, operation and maintenance of the Project. Def.'s Ex. 1. The Manual is separated into two parts with Part I providing information about the Manual itself and describing the Project and Part II presenting descriptions of the Project facilities and providing basic instructions for their proper operation and maintenance. *Id.* at 1. The description of the Channel in Part I includes descriptions of the height of the chain-link fence surrounding the Channel, the size of the openings for ladders, and the Sunland Park Bridge among other things. *Id.* at 5.

In Part II, the Manual states:

No improvement shall be passed over, under, or through the structures, nor shall any excavation or construction be permitted within the limits of the project right-of-way, nor shall any change or modification be made in any feature of the project structures without prior determination by the District Engineer, Albuquerque District, Corps of Engineers, or his authorized representative, that such improvement, excavation, construction, or alteration will not adversely affect the functions of the project structures.

*Id.* at 9.

The Manual also provides that the District Engineer of the Corps of Engineers ("Corps") will "have access at all times to

all portions of the project structures. These structures shall be inspected periodically by the District Engineer or his representative to determine the condition thereof and to ascertain the adequacy of operation and maintenance." *Id.* at 10. The Operations Manual states that the project "was turned over to the City of El Paso for operation and maintenance on 28 January 1981." *Id.* at 8.

On the night of October 31, 2004, while walking along the 600 block of Sunland Park Drive in El Paso, Texas, Plaintiff Guadalupe Rodriguez ("Rodriguez") fell from the road as it passed over the Channel. Pls.' Resp. to Def.'s Mot. for Summ. J. 1–2. Rodriguez landed in the Channel and was severely injured. *Id.* at 2. She died soon after. *Id.*

On February 10, 2005, Rodriguez' survivors filed a proof of claim with the United States as required under the Federal Tort Claims Act. Compl. ¶ 5. The United States denied the claim and Plaintiffs timely filed suit for negligence in this Court within six months of the denial. *Id.* On November 8, 2005, Plaintiffs brought the instant lawsuit on behalf of decedent Rodriguez as well as on their own behalf for damages resulting from Rodriguez' fall. Compl. ¶¶ 12–13. On September 1, 2006, the United States filed its "Motion to Dismiss or, Alternatively, Motion for Summary Judgment."

In addition to Agreement and Manual, the United States has presented evidence to support its position in the form of a declaration by Susan Bittick, a project manager for the Army Corps of Engineers based in Albuquerque, New Mexico ("Bittick Declaration") and a letter from the United States Army rejecting Plaintiffs' claim. Bittick Decl.; Def.'s Ex. 2. Both documents state that the United States does not own, operate, or maintain the Project. Bittick Decl. ¶ 7; Def.'s Ex. 2.

## II. DISCUSSION

### A. Standards

Defendant has filed a Motion to Dismiss or, Alternatively, Motion for Summary Judgment. The standards for each are discussed below:

#### 1. Motion to Dismiss

Federal courts are courts of limited jurisdiction. *Peoples Nat'l Bank v. Office of the Comptroller of the Currency of the United States,* 362 F.3d 333, 336 (5th Cir. 2004). Without jurisdiction conferred by statute, federal courts lack the power to adjudicate claims. *Id.* A party may challenge a district court's subject matter jurisdiction by filing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1). Fed.R.Civ.P. 12(b)(1).

A motion to dismiss pursuant to Rule 12(b)(1) must be considered before any other challenge, because a court must have jurisdiction before determining the validity of a claim. *Moran v. Kingdom of Saudi Arabia,* 27 F.3d 169, 172 (5th Cir.1994). In ruling upon such motion, a district court is free to weigh the evidence and satisfy itself as to its power over the case. *MDPhysicians & Assoc., Inc. v. State Bd. of Ins.,* 957 F.2d 178, 181 (5th Cir.1992). In making this ruling, the district court may rely upon: (1) the complaint alone, (2) the complaint supplemented by undisputed facts in the record, or (3) the complaint supplemented by undisputed facts in addition to the court's resolution of disputed facts. *Barrera–Montenegro v. United States and Drug Enforcement Admin.,* 74 F.3d 657, 659 (5th Cir.1996).

The standard of reviewing a motion to dismiss pursuant to 12(b)(1) depends upon whether the defendant makes a facial or factual challenge to the plaintiff's complaint. *Paterson v. Weinberger,* 644 F.2d 521, 523 (5th Cir.1981). When the defen-

dant makes a facial attack by the mere filing of a Rule 12(b)(1) motion, the trial court looks to the sufficiency of the plaintiff's allegations, which are presumed to be true. *Id.* When the defendant makes a factual attack by providing affidavits, testimony, and other evidence challenging the court's jurisdiction, the plaintiff must submit facts in support of the court's jurisdiction and thereafter bear the burden of proving that the trial court has subject matter jurisdiction. *Middle S. Energy, Inc. v. City of New Orleans,* 800 F.2d 488, 490 (5th Cir.1986).

### 2. Motion for Summary Judgment

A summary judgment movant must show by affidavit or other evidence that there is no genuine issue regarding any material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To establish that there is no genuine issue as to any material fact, the movant must either submit evidence that negates the existence of some material element of the nonmoving party's claim or defense, or, if the crucial issue is one for which the nonmoving party will bear the burden of proof at trial, merely point out that the evidence in the record is insufficient to support an essential element of the nonmovant's claim or defense. *Lavespere v. Niagara Machine & Tool Works, Inc.,* 910 F.2d 167, 178 (5th Cir.1990). Once the movant carries the initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *See Fields v. City of S. Houston,* 922 F.2d 1183, 1187 (5th Cir.1991).

Summary judgment is required if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FED.R.CIV.P. 56(c); *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. 2548. In order for a court to conclude that there are no genuine issues of material fact, the court must be satisfied that no reasonable trier of fact could have found for the nonmovant, or, in other words, that the evidence favoring the nonmovant is insufficient to enable a reasonable jury to return a verdict for the nonmovant. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 n. 4, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### B. Federal Tort Claims Act

In their Complaint, Plaintiffs allege that the United States was responsible for the maintenance, inspection, and service of the bridge. Pls.' Compl. ¶ 8. They further allege that that the United States, through its agents or employees, was negligent in failing to warn Rodriguez of the dangerous condition on that bridge, and negligently caused or permitted the dangerous condition to exist. *Id.* ¶ 10.

In its Motion, the United States argues that the Court does not have subject matter jurisdiction to hear the claim because the United States has not waived sovereign immunity under the Federal Tort Claims Act ("FTCA"). Def.'s Mot. 4–6. The United States also argues that the Texas Statute of Repose bars any claims based upon negligent construction or design of the Channel. *Id.* at 6–7.

Plaintiffs respond that the United States assumed sufficient control over the premises in question to waive sovereign immunity. Pls.' Resp. 4. They point to the Manual as well as the Agreement to support their claim of sufficient control. *Id.* at 6. Finally, they argue that the ten-year bar of the Texas Statute of Repose barring claims of negligent construction and design is inapplicable to the facts of this case. *Id.* at 6–7.

As the United States has provided evidence challenging this Court's jurisdiction in the form of the Agreement, the Opera-

tions Manual, the Bittick Declaration, and the letter from the Corps denying the claim, the burden shifts to Plaintiffs to provide facts to support their claim of jurisdiction.

■ Absent consent, the United States is immune from suit and the terms of any consent define a court's jurisdiction to hear the suit. *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980) (internal citations omitted). The Federal Tort Claim Act, 28 U.S.C. §§ 1346(b), 2671–80 is a limited waiver of sovereign immunity and courts must strictly construe such waivers, resolving "all ambiguities in favor of the sovereign." *Linkous v. United States*, 142 F.3d 271, 275 (5th Cir.1998).

The FTCA provides that the United States may be sued for personal injury or death caused by

> the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1) (2004).

As the alleged act or omission in this case took place in Texas, Texas law controls.

### 1. Premises liability in Texas

■ In Texas, a defendant may be liable for a dangerous condition on property if "it assumed control over and responsibility for the premises," even if it did not own or occupy that premises. *City of Denton v. Page*, 701 S.W.2d 831, 835 (Tex.1986). The relevant inquiry is whether the defendant assumed sufficient control over the part of the premises that presented the alleged danger so that the defendant had the responsibility to remedy it. *County of Cameron v. Brown*, 80 S.W.3d 549, 556 (Tex. 2002).

■ If the United States owns the land in question, then it is clear that it could be liable to Plaintiffs under Texas law. *See Page*, 701 S.W.2d at 835. The United States will then have waived sovereign immunity. Through the Bittick Declaration and the Army's rejection letter, the United States has presented evidence that it does not, in fact, own the land in question. Plaintiffs do not offer any facts or arguments to rebut that evidence. In fact, though Plaintiffs do not explicitly admit that the United States does not own the land in question, they do not appear to dispute the issue. Because Plaintiffs have not provided any evidence or argument to rebut the United States' showing, the Court finds that Plaintiffs have not met their burden of demonstrating subject matter jurisdiction on the grounds of ownership of the property.

The United States, however, can still be liable if it exercised sufficient control over the property. The Agreement and the Manual demonstrate that the City, not the United States, is responsible for maintenance and operation of the Project. Through the Agreement and the Manual, the United States has handed over the Project to the City. These documents indicate that the responsibility to maintain and operate the project, which would include remedying dangerous conditions, belongs to the City. While the Corps must determine whether any improvement or modification will interfere with the functioning of the Project, such a requirement does not constitute "sufficient control over the part of the premises that presented the alleged danger so that the defendant had the responsibility to remedy it" as required by the Texas Supreme Court in *Brown*. The Corps' right of review and approval does

not change that the fact that they City bears that responsibility.

In fact, the contractual requirement of United States approval for modifications and improvements reinforces the notion that the City bears the responsibility for the project. If the United States had operations and maintenance responsibility, there would be no need to retain the right to approve modifications. Thus, the Agreement does not support Plaintiffs' contention that the United State's right of approval creates a responsibility to remedy dangers.

Finally, the Court agrees with the United States that the provisions in Part I of the Manual discussing the height of the Channel fencing and the size of the Channel itself are descriptive, not prescriptive. The Manual is quite clear that Part I merely describes the project. Any argument that the Manual's specification of the fencing surrounding the Channel creates sufficient control to establish liability is unpersuasive. Plaintiffs have not met their burden in showing that the United States could be subject to premises liability under Texas law and, therefore, any claims of negligent maintenance and operations of the Project must be dismissed for lack of subject matter jurisdiction.

### 2. Texas Statute of Repose

Plaintiffs next contend that the United States was negligent in the design and construction of the project. In their Complaint, Plaintiffs claim that "the drainage canal and bridge was [sic] owned, built, designed operated, or controlled by Defendant. Defendant's actions or omissions were a proximate cause of the Rodriguez' injuries and death." Pls.' Compl. ¶ 6. Plaintiffs also note that "[t]here were no barriers, signs, or warnings of the dangerous conditions of falling if attempting to cross" and "the drainage canal did not have a barricade, sign, warning, or lighting

to prevent human beings from such falls...." *Id.* ¶¶ 6–7. The United States argues that the Texas Statute of Repose, Texas Civil Practice and Remedies Code sections 16.008 and 16.009, cuts off any such claims.

Plaintiffs counter that the Statute of Repose is inapplicable to the facts of this case because the Statute of Repose does not apply to individuals in actual possession of or control over the property at the time of the injury and the United States retained sufficient control to be exempted from the statutory bar.

Section 16.008 provides:

(a) A person must bring suit for damages for a claim listed in Subsection (b) [which includes wrongful death and personal injury] against a registered or licensed architect, engineer, interior designer, or landscape architect in this state, who designs, plans, or inspects the construction of an improvement to real property or equipment attached to real property, not later than 10 years after the substantial completion of the improvement or the beginning of operation of the equipment in an action arising out of a defective or unsafe condition of the real property, the improvement, or the equipment.

TEX. CIV. PRAC. & REM.CODE ANN. § 16.008 (Vernon 2006).

Section 16.009 provides:

A claimant must bring suit for damages for a claim listed in Subsection (b) [which includes wrongful death and personal injury] against a person who constructs or repairs an improvement to real property not later than 10 years after the substantial completion of the improvement in an action arising out of a defective or unsafe condition of the

real property or a deficiency in the construction or repair of the improvement. *Id.* § 16.009.

Unlike section 16.008, however, section 16.009 does not bar actions:

(1) on a written warranty, guaranty, or other contract that expressly provides for a longer effective period; (2) *against a person in actual possession or control of the real property at the time that the damage, injury, or death occurs;* or (3) based on wilful misconduct or fraudulent concealment in connection with the performance of the construction or repair.

*Id.* § 16.009(e) (emphasis added).

■■■ The Statute of Repose begins to run upon the occurrence of a particular event, such as the substantial completion of an improvement, rather than when a cause of action accrues. *Id.* §§ 16.008–16.009; *Tumminello v. U.S. Home Corp.,* 801 S.W.2d 186, 187–88 (Tex.App.1990) (writ denied). A statute of limitations is a procedural device which operates as a defense to limit the remedy available from an existing cause of action, while a statute of repose creates a substantive right to be free from liability after a legislatively determined period. *See Cadle Co. v. Wilson,* 136 S.W.3d 345, 350 (Tex.App.2004) (no pet.). Statutes of limitations bar enforcement of a right; a statute of repose takes away the right altogether. *Id.* The discovery rule does not toll a statute of repose. *Dallas Mkt. Ctr. Dev. Co. v. Beran & Shelmire,* 824 S.W.2d 218, 221 (Tex.App. 1991) (writ denied). Thus, a statute of repose can cut off a right of action before an injured party discovers or reasonably should have discovered the defect or injury. *Id.; see also Johnson v. City of Fort Worth,* 774 S.W.2d 653, 654 n. 1 (Tex.1989).

■■■ The purpose of the Statute of Repose is to protect individuals "who have no control over real estate improvements and have no authority to go onto the premises to inspect the improvement for unsafe con-

ditions, to ensure that it is being used for the purpose for which it was designed, or to check for any defective alterations." *Hernandez v. Koch Machinery Co.,* 16 S.W.3d 48, 52 (Tex.App.2000) (rehearing overruled, review denied, rehearing of petition for review denied).

■■■ Though it is undisputed that the Channel is an improvement and that more than ten years have passed since the completion of the project in 1980, the Court nevertheless agrees with Plaintiffs that the statute of repose does not bar their negligent construction claim. The United States has retained control over the real estate improvements at issue in this case, it has the authority to enter the property for inspection, and it has in fact done so. In accordance with section 16.009(e) and the Texas Court of Appeals' holding in *Hernandez,* the Court finds that the Statute of Repose does not bar Plaintiffs' claims involving negligence in the construction of the Channel.

■■■ The same cannot be said with regard to Plaintiffs' claims of negligent design. Section 16.008, which controls claims with regard to negligent design, contains no such exception to the applicability of the statute of repose for persons retaining control of the property, and the Court in *Hernandez* only considered section 16.009, not section 16.008.

The Court finds that the Agreement and Manual confer sufficient control on the United States over the property such that Plaintiffs' claims regarding negligence in the construction may proceed. This is so even though that control is not sufficient to hold the United States liable for general premises liability arising from the operation and maintenance of the Project as discussed above. The two separate claims involve the United States in two separate roles, as owner/occupier and as builder. They involve two separate questions of

law, the control sufficient to establish premises liability and the control sufficient to remove a time bar to a claim of negligence in construction.

## III. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss or in the Alternative for Summary Judgment (Doc. No. 9) is **GRANTED** in part as to the premises liability and negligent design claims and **DENIED** in part as to the claim of negligent construction.

**SO ORDERED.**