In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-02-00018-CV


______________________________




ANDRE G. PONSART, d/b/a


MAINTENANCE SPECIALTY, INC., Appellant



V.



CITICORP VENDOR FINANCE, INC.,


f/k/a COPELCO CAPITAL, INC., Appellee




 


On Appeal from the County Court at Law No. 4


Dallas County, Texas


Trial Court No. CC-01-06320-D




 




Before Morriss, C.J., Grant and Ross, JJ.


Opinion by Justice Ross



O P I N I O N



 Andre G. Ponsart, d/b/a Maintenance Specialty, Inc., appeals the final judgment on
a bill of review that sought to set aside a default judgment rendered against him. Ponsart
raises three points of error, each relating to a meritorious defense to the underlying suit. 
They are: 1) the trial court erred because the default judgment in the underlying suit was
based on an improper reinstatement, 2) the trial court erred by dismissing a challenge to
personal jurisdiction without first holding an evidentiary hearing, and 3) the trial court erred
by ignoring a motion to set aside the default judgment on the ground of a forged signature
on a contract. Conversely, Citicorp Vendor Finance, Inc., f/k/a Copelco Capital, Inc., insists
Maryland's disposition enforcing the underlying judgment is res judicata.

Factual Summary


 This case has a long and complicated history. We recount only those facts
necessary to understand the underlying issues in this appeal. 

 In the summer of 1998, a group of Texas individuals approached Ponsart, who was
then living in Maryland, seeking capital to establish a copier business. On July 16, 1998,
Copelco purportedly entered into a lease with Ponsart, d/b/a Maintenance Specialty, Inc.,
to supply him with two copy machines. The copy machines were delivered the same day. 
Ponsart insists that he did not sign the lease and that the business venture never came to
fruition.

 Approximately seven months later, Copelco brought a collection action to recover
the amount due on the lease. Copelco served Ponsart through the Texas Secretary of
State in accordance with Tex. Bus. Corp. Act Ann. art. 2.11 (Vernon 1980). Ponsart
acknowledged receiving notice of the collection action, but assumed it was a mistake and
"did not focus on the matter." Ponsart filed no answer to the underlying complaint. On
August 12, 1999, the trial court dismissed the action sua sponte for want of prosecution. 
On September 22, 1999, the trial court reinstated the case and entered a default judgment
against Ponsart. Nothing in the record indicates Ponsart sought a motion for new trial,
appeal, or appeal for a writ of error during the statutory period. 

 On July 24, 2000, Copelco filed a motion to enforce the foreign judgment against
Ponsart with the Circuit Court of Montgomery County, Maryland, and the Maryland court
duly entered an enforcement judgment against Ponsart. Thereafter, Ponsart elected to
pursue his judicial remedies in Maryland, first seeking to vacate the foreign judgment, then
appealing to Maryland's higher courts. All Maryland appeals were denied.

 Finding no relief in Maryland, Ponsart filed a petition for a bill of review with the
Dallas County Court. The court reviewed the pleadings, evidence, and arguments of
counsel and denied Ponsart's petition for a bill of review. Ponsart now appeals.

Bill of Review When reviewing a bill of review, every presumption is indulged in favor of the court's
ruling, which will not be disturbed unless it is affirmatively shown there was an abuse of
judicial discretion. Interaction, Inc. v. State, 17 S.W.3d 775, 778 (Tex. App.-Austin 2000,
pet. denied). A trial court abuses its discretion when it acts in an unreasonable and
arbitrary manner, or without reference to any guiding rules or principles. See Downer v.
Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985). Because it is
fundamentally important that finality be accorded to judgments, bills of review are always
watched by courts of equity "with extreme jealousy, and the grounds on which interference
will be allowed are narrow and restricted." Montgomery v. Kennedy, 669 S.W.2d 309, 312
(Tex. 1984) (quoting Alexander v. Hagedorn, 148 Tex. 565, 226 S.W.2d 996, 998 (1950)). 

 A bill of review is an independent action to set aside a judgment that is no longer
appealable or subject to challenge by a motion for new trial. Wembley Inv. Co. v. Herrera,
11 S.W.3d 924, 926-27 (Tex. 1999). A petitioner for bill of review must ordinarily prove: 
1) a meritorious claim or defense to the cause of action alleged to support the judgment,
2) which it was prevented from making because of fraud, accident, or wrongful act of the
opposite party, and 3) that was untainted by any fault or negligence of its own. Id. at 927.
A petitioner must plead and prove each element, and without such proof the trial court
should deny the bill of review. See Hernandez v. Koch Mach. Co., 16 S.W.3d 48, 60 (Tex.
App.-Houston [1st Dist.] 2000, pet. denied). Although a bill of review is an equitable
proceeding, the fact an injustice has occurred is not sufficient to justify relief. Herrera, 11
S.W.3d at 927. A petitioner must also show he is free from negligence. Id. Generally, bill
of review relief is available only if a party has exercised due diligence in pursuing all
adequate legal remedies against a former judgment and, through no fault of its own, has
been prevented from making a meritorious claim or defense by the fraud, accident, or
wrongful act of the opposing party. Id.

 Each point of error Ponsart raises revolves around the first element of a bill of
review-a meritorious claim or defense to the underlying suit. For convenience, we will
combine Ponsart's first and third points of error. We will address Ponsart's second point
separately because a challenge to the jurisdiction in the underlying suit requires a slightly
different analysis.

 Ponsart acknowledges, as he must, that a party who fails to timely avail itself of
available legal remedies is not entitled to relief by bill of review. However, Ponsart
contends we must adopt a broader diligence standard when dealing with potentially void
judgments. We disagree. 

 When the time for appeal expires, a bill of review is the exclusive remedy to vacate
a judgment. Each element of a bill of review must be proven even if the underlying
judgment can be shown to be void. See In re D.S., 76 S.W.3d 512, 518 (Tex.
App.-Houston [14th Dist.] 2002, no pet.) (citing Middleton v. Murff, 689 S.W.2d 212, 213
(Tex. 1985)). If a party permits a judgment to become final by neglecting to file a motion
for new trial, appeal, or appeal by writ of error, then the party is precluded from proceeding
on a petition for bill of review unless the complaint shows a good excuse for failure to
exhaust adequate legal remedies. Rundle v. Comm'n for Lawyer Discipline, 1 S.W.3d 209,
216 (Tex. App.-Amarillo 1999, no pet.). 

 Copelco served its petition in the underlying suit on Ponsart through the Texas
Secretary of State in accordance with Tex. Bus. Corp. Act Ann. art. 2.11. Ponsart admits
service, but assumed it was a mistake and did not file an answer. The trial court later
entered a default judgment against him. During the interval between September 22, 1999,
the date of the default judgment, and when Ponsart petitioned the trial court for a bill of
review June 13, 2001, the only legal action Ponsart took in Texas was "supposedly" filing
a motion to set aside the default judgment. The record, however, is absent of a properly
file-stamped copy of this motion. In addition, the draft copy of this motion contained in the
record was dated over seven months after the trial court entered the default judgment, long
after the trial court's plenary power ceased. 

 Within his first point of error, Ponsart raises the issue of "no notice" of the default
judgment as a basis of his appeal. Although it is unclear from the record exactly when
Ponsart received notice of the default judgment, actual notice was not required. A party
to a suit is charged by law with notice of all orders and judgments rendered in the suit.
K & S Interests, Inc. v. Tex. Am. Bank/Dallas, 749 S.W.2d 887, 892 (Tex. App.-Dallas
1988, writ denied) (op. on reh'g); Pentikis v. Tex. Elec. Serv. Co., 470 S.W.2d 387, 390
(Tex. Civ. App.-Fort Worth 1971, writ ref'd n.r.e.). Ponsart was a party in the underlying
suit because he was named in the pleadings, was served, and accepted service. See
Mapco, Inc. v. Carter, 817 S.W.2d 686, 687 (Tex. 1991) (judgment may not be rendered
against any defendant unless on service, acceptance, or waiver of process, or
appearance); Ex parte Bowers, 886 S.W.2d 346, 349 (Tex. App.-Houston [1st Dist.] 1994,
orig. proceeding). Even if Ponsart did not actually know the court had entered a default
judgment against him, he should have been aware that failing to answer Copelco's
complaint would result in a default judgment. Ponsart had legal remedies available to him
to challenge the default judgment. He could have sought a new trial, appealed, or
petitioned for a writ of error. He elected not to take these options to his own peril. Rather,
Ponsart chose to pursue his legal options in Maryland by seeking to have the foreign
judgment overturned. Only after he exhausted his legal remedies in Maryland did he seek
equitable relief in Texas. "Equity aids the diligent and not those who slumber on their
rights." Callahan v. Giles, 137 Tex. 571, 155 S.W.2d 793, 795 (1941).

 In a petition for a bill of review, Ponsart had the burden to show his lack of
negligence by a preponderance of the evidence. The trial court's finding that Ponsart did
not carry this burden was reasonable. Therefore, because the court's judgment can be
supported on the ground that Ponsart failed to exercise due diligence, we need not
address whether, in fact, Ponsart had a meritorious defense under his first and third points
of error. Ponsart's first and third points of error are overruled.

 In his second point of error, Ponsart asserts the trial court erred in rendering
judgment against him because the court in the underlying cause never had personal
jurisdiction over him. By this point, Ponsart seeks not to satisfy the requirements for a bill
of review, but to collaterally attack the underlying judgment. See Tex. Dep't of Transp. v.
T. Brown Constructors, Inc., 947 S.W.2d 655, 659 (Tex. App.-Austin 1997, writ denied)
(bill of review that fails as direct attack may constitute collateral attack). In a collateral
attack on a judgment, the recitations of the judgment control the rest of the record and
extrinsic evidence cannot be used to establish a lack of jurisdiction. Huffstutlar v. Koons,
789 S.W.2d 707, 710 (Tex. App.-Dallas 1990, orig. proceeding). The court in the
underlying cause recited in its judgment that, although Ponsart did not appear at trial, he
had been "duly served with citation."

 Ponsart seeks to expand the scope of review beyond the judgment by invoking the
exception to this narrow scope that applies when the defendant alleges the court lacked
any potential jurisdiction. See id. When a court has no potential jurisdiction over the
defendant, the defendant can collaterally attack that court's judgment with extrinsic
evidence. Dispensa v. Univ. State Bank, 987 S.W.2d 923, 930 (Tex. App.-Houston [14th
Dist.] 1999, no pet.); see, e.g., Pellow v. Cade, 990 S.W.2d 307, 312 (Tex.
App.-Texarkana 1999, no pet.) (justice court lacked any potential jurisdiction over
nonexistent claim); Hicks v. Sias, 102 S.W.2d 460, 464 (Tex. Civ. App.-Beaumont 1937,
writ ref'd) (before enactment of long-arm statute, trial court lacked potential jurisdiction over
nonresident defendant served out of state). A party contesting jurisdiction has the burden
to negate all bases of personal jurisdiction. See Stauffacher v. Lone Star Mud, Inc., 54
S.W.3d 810, 816 (Tex. App.-Texarkana 2001, no pet.). Here, the trial court in the
underlying suit had potential jurisdiction over Ponsart. Our rules of procedure governing
service of process and our long-arm statute-each of which protect the due process rights
of individuals-enabled the court to have potential jurisdiction over him. Ponsart contends
jurisdiction under the Texas long-arm statute fails because it was based on a forged
contract. The question of forgery is a factual one, and the trial court could have reasonably
found the signature was Ponsart's. Ponsart admitted he discussed a possible business
venture with individuals in Texas and enclosed a business plan showing it was to be a
Texas corporation. The signature of "Andre G. Ponsart" appears on the lease agreement
with Copelco. Although the trial court did not provide findings of facts and conclusions of
law on the forgery issue, Ponsart never made a request for them as he was entitled to do
under Tex. R. Civ. P. 296 and 297. See Daimler-Benz Aktiengesellschaft v. Olson, 21
S.W.3d 707 (Tex. App.-Austin 2000, pet. dism'd w.o.j.). When, as here, the trial court has
not made findings of fact and conclusions of law, we presume it resolved all factual
disputes in support of the judgment. Stauffacher, 54 S.W.3d at 816; see also Worford v.
Stamper, 801 S.W.2d 108, 109 (Tex. 1990). If the trial court found Ponsart's signature was
valid, personal jurisdiction is established under the Texas long-arm statute. 

 Because the court had potential jurisdiction over Ponsart, he is subject to the
general rule regarding collateral attacks on judgments. As stated earlier, under that rule,
a defendant alleging no jurisdiction may not rely on extrinsic evidence to attack the
judgment and may not collaterally attack the judgment. By failing to show that the court
lacked jurisdiction over him, Ponsart must limit his collateral attack to the recitals of the
judgment. The judgment's recital that Ponsart was duly cited forecloses this attack. We
therefore overrule Ponsart's second point of error.

 Having disposed of Ponsart's points of error on other grounds, we do not reach the
merits of his claim for a meritorious defense, nor do we reach Copelco's contention that
Maryland's disposition of the underlying judgment is res judicata. 

 We affirm the judgment.


 Donald R. Ross

 Justice


Date Submitted: September 12, 2002

Date Decided: October 23, 2002


Publish




" SemiHidden="false"
 UnhideWhenUsed="false" Name="Medium Grid 2 Accent 6"/>
 
 
 
 
 
 
 
 
 
 
 
 
 












 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00069-CR

                                                ______________________________

 

 

                               NORRIS SHANNON BAINES,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                       On Appeal from the 217th
Judicial District Court

                                                           Angelina County, Texas

                                                            Trial
Court No. 29,109

 

                                                      
                                            

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                                        Opinion by Justice Moseley








                                                                   O P I N I O N

 

            For
the sake of clarity, we withdraw our opinion rendered in the matter September
1, 2010, and issue this opinion in replacement of it. 

            Norris
Shannon Baines appeals his Angelina County conviction for the state jail felony
of evading detention and sentence of 180 days in the county jail.[1]  The State alleged Baines committed evading
detention by leading a police officer on a low-speed chase at speeds of
approximately fifteen to twenty miles per hour around a single city block.  The State sought to enhance the punishment,
alleging that Baines had previously been convicted of two prior felonies.  After Baines waived his right to a jury, a
bench trial was conducted.  The trial
court carried Bainess motion to suppress along with the bench trial.  After the parties had rested, the trial court
reviewed the arresting officers in-car video recording of the incident,
recalled the police officer, and questioned the police officer concerning the
depiction of events as preserved on the video recording.  The trial court then permitted closing
arguments and oral arguments on the motion to suppress.  The trial court denied Bainess motion to
suppress and found Baines guilty of evading detention.  At the punishment hearing, the trial court
accepted Bainess plea of true to the enhancement paragraphs, but announced, Im
making no finding on the enhancements.  And
under [12.44(a)]  Im sentencing you to
180 days in county jail . . . .  The
trial court later explained its decision was based on the gravity and
circumstances of the offense.  

            Baines
raises three issues on appeal, arguing that the trial court erred in denying
his motion to suppress, the trial court erred by calling a witness after the
parties had rested, and the evidence is legally and factually insufficient to
support the conviction.  The State raises
a cross-point in its brief, complaining that the sentence imposed by the trial
court is illegal.

I.          The Error, if any, in
Reopening the Evidence on the Courts Motion Is Not Preserved

            In
his first point of error, Baines argues that the trial court erred in
re-opening the evidence on its own motion. 
The Texas Code of Criminal Procedure provides that a trial court shall
allow testimony to be introduced at any time before the argument of a cause is
concluded, if it appears that it is necessary to a due administration of
justice.  Tex. Code Crim. Proc. Ann. art. 36.02 (Vernon 2007); see Peek v. State, 106 S.W.3d 72, 79
(Tex. Crim. App. 2003) (interpreting Article 36.02).  Baines contends that the trial court erred in
re-opening the evidence without a motion from either party.  Baines further contends that the additional
testimony was not necessary to the due administration of justice.  The reporters record provides as follows:

            [Defense
Counsel]:  Defendant would rest, Your
Honor.

 

            [Prosecutor]:  We do not have any rebuttal evidence.  Close.

 

            THE
COURT:  Roll the TV over here.  Roll the TV over here closer.

 

            [Defense
Counsel]: Yes, Your Honor.

 

            THE
COURT:  You can step down, Mr. Baines.

 

            [Defense
Counsel]:  If you want me to stop, let me
know, Judge.

 

            (DVD
Played.)

 

            THE
COURT:  Yeah, stop it and back it up
again.  Go.

 

            [Defense
Counsel]:  I think we go into slow.

 

            THE
COURT:  Yeah.  Okay. 
Back it up again.  Officer
Jackson, come up here a second.

 

                                                KEVIN
JACKSON,

 

resumed the witness stand and testified under oath
as follows:

 

                                                EXAMINATION

 

BY THE COURT: 
Hold on.  Okay.  What I want you to do is watch.  This is your car approaching the red light or
that intersection.  I cant tell - - I
guess youre coming up on the railroad tracks. 
I see the marker now in the turn lane.

 

            [Officer
Jackson]:  Yes, sir.

 

            THE
COURT:  What I want you to do is tell him
to stop it as soon as you think you see what you saw the truck start to move
forward.  Just tell him, stop, and were
going to run it slow.

 

            [Officer
Jackson]:  Stop.

 

            THE
COURT:  Okay.

 

            [Officer
Jackson]:  Hes already moving.

 

            THE
COURT:  Okay.  Can you point out the taillights to me of
what youre showing me is the truck?  You
just have to hold it down.

 

            [Officer
Jackson]:  These are the taillights.

 

            THE
REPORTER:  Im sorry, sir.  I cant hear you.

 

            [Officer
Jackson]:  I said the taillights are
right there.  This is the truck before it
was -- that was green.

 

            THE
COURT:  Okay.  Back it up a little bit, [Defense Counsel],
just a couple frames if you can do that.

 

            [Defense
Counsel]:  Okay.  Lets see.

 

            THE
COURT:  Slow it down.  Will it slow down more than that?  More than that?

 

            [Officer
Jackson]:  He was -- 

 

            THE
REPORTER:  Im sorry.  I didnt hear what you said.

 

            [Officer
Jackson]:  Im sorry.  I was saying the same thing.  He was already moving.

 

            THE
COURT:  Stop.  Stop it.

 

            [Defense
Counsel]:  Okay.  Stop?

 

            THE
COURT:  Okay.  Will it slow down any more than that?

 

            [Defense
Counsel]:  Its currently at, I think,
half or  no, its at a quarter.

 

            THE
COURT:  Can you slow it down any more
than that?

 

            [Defense
Counsel]:  Im not sure.  Quarter speed is the slowest we can go,
Judge.  I can play it at a quarter.

            

            THE
COURT:  Okay.

 

            [Defense
Counsel]:  Playing at a quarter right
now.

 

            THE
COURT:  Stop.  Okay. 
Thats where the truck starts moving? 

 

            [Officer
Jackson]:  Yes, sir.

 

            THE
COURT:  Because from what I can tell --
and tell me if Im wrong -- you cannot see the truck taillights until that
point.

 

            [Officer
Jackson]:  Yes, sir.

 

            THE
COURT:  And is that because why?  Why cant I see them before then?

 

            [Officer
Jackson]:  Because its in front of this
other car.

 

            THE
COURT:  Okay.  All right. 
Go ahead.  Okay.  Back it up a little bit.

            

            [Defense
Counsel]:  Okay.

 

            THE
COURT:  Okay.  Stop. 
All right.  Thank you.

 

            [Officer
Jackson]:  Do you need me anymore, Judge.

 

            THE
COURT:  No, have a seat.

 

            Defense
counsel never objected at any point during the examination of Jackson by the
trial court after both parties had rested. 
In fact, it appears from the record that defense counsel participated in
that exchange between the judge and the witness by operating the device that
played the recording.  To preserve a
complaint for appellate review, Baines must have presented to the trial court a
timely request, objection, or motion stating the specific grounds for the
ruling desired.  Tex. R. App. P. 33.1. 
Any error concerning the trial court re-opening the evidence has not
been preserved for appellate review.  We
overrule Bainess complaint that the trial court erred in re-opening the
evidence after both parties had rested.

II.        The
Trial Court Did Not Err in Denying Bainess Motion to Suppress

            Baines alternatively argues that the
trial court erred in denying his motion to suppress because the evidence
established that the traffic light had turned green prior to Bainess vehicle
entering the intersection.  In essence,
Bainess argument is that Jackson lacked reasonable suspicion for the initial
detention and, therefore, any statements or other evidence tainted by the
alleged illegal detention should have been suppressed.

            Jackson,
an officer with the Lufkin Police Department, testified that he observed a
vehicle driven by Baines enter an intersection while the traffic light was red
and that the traffic light flashed green while Bainess vehicle was in the
middle of the intersection.  Jackson
testified that observing this, he activated his overhead emergency lights in
the 300 block of Church Street, which is located behind the Brookshire Brothers
Market.  Baines then led Jackson on a
low-speed chase at speeds of approximately fifteen to twenty miles per hour around
a city block.  In doing so, Baines traveled
down Church Street going south and turned onto Kornegary going west.  Immediately after turning onto Kornegary,
Jackson observed Baines throw something into a bush.  Baines then proceeded down Kornegary to
Chestnut and then returned to Church Street on Kerr.  The chase ended at 313 Church Street, almost
where the chase had begun.  Jackson
estimated the total distance of the chase to be approximately a quarter of a
mile.  Baines was arrested for evading
detention.  The police later discovered
some marihuana near the location Jackson had observed Baines discard something
from his car.  Baines testified that the
traffic light was green when he proceeded through the light.   

            Our
review of the video recording reveals that due to the distance from the police
officers camera to the intersection and its perspective behind Bainess car,
it is difficult to determine from it whether Bainess vehicle had entered the
intersection against a red light.  The
in-car video recording does not clearly contradict Jacksons testimony and the
movement of Bainess vehicle after the traffic light turned green suggests that
Bainess vehicle may have been in motion while the traffic light was red.  

            In
reviewing a trial courts ruling on a motion to suppress, appellate courts must
give great deference to the trial courts findings of historical facts, so long
as the record supports those findings.  Guzman v. State, 955 S.W.2d 85, 89 (Tex.
Crim. App. 1997).  Because the trial
court is the exclusive finder of fact, the appellate court reviews evidence
adduced at the suppression hearing in the light most favorable to the trial courts
ruling.  Carmouche v. State, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000).  Further, we give deference to the trial courts
rulings on mixed questions of law and of fact when those rulings turn on an
evaluation of credibility and demeanor.  Guzman, 955 S.W.2d at 89.  On the other hand, in circumstances where
such rulings do not turn on an evaluation of credibility and demeanor, we
review the trial courts actions de novo. 
Id.

            Baines
argues that his detention by Jackson was not lawful because the evidence is
insufficient to establish a reasonable suspicion of unlawful activity to
justify the detention.  A routine traffic
stop closely resembles an investigative detention.  Berkemer
v. McCarty, 468 U.S. 420, 43637 (1984). 
If an officer has a reasonable basis for suspecting that a person has
committed a traffic offense, the officer may legally initiate a traffic stop.  Zervos
v. State, 15 S.W.3d 146, 151 (Tex. App.Texarkana 2000, pet. refd).  However, [a]n officers reasonable suspicion
of an alleged traffic violation cannot be based on a mistaken understanding of
traffic laws.  Fowler v. State, 266 S.W.3d 498, 504 (Tex. App.Fort Worth 2008,
pet. refd).  

            The
Texas Transportation Code prohibits the operator of a motor vehicle from
entering an intersection when the traffic light is signaling red.  See
Tex. Transp. Code Ann. § 544.007
(Vernon Supp. 2010).  Although Baines
testified the light was showing green when he entered the intersection, Jackson
testified that the light was red and only turned green after Baines entered the
intersection.  The trial court could have
believed Jacksons testimony instead of the testimony of Baines.  Thus, the trial court could have concluded
that Jackson observed a traffic violation and, therefore, had reasonable
suspicion for the traffic stop and detention. 
The trial court did not err in denying Bainess motion to suppress.

III.       The Evidence Is
Sufficient

            In
his remaining points of error, Baines argues the evidence is legally and
factually[2]
insufficient to support his conviction. 
According to Baines, the low speed and short length of the chase
establishes that he was not attempting to flee Jackson.  Baines alternatively argues that the trial
courts rejection of his defense of necessity is not supported by the
evidence.  

            We
are directed to subject challenges to the legal sufficiency of the evidence to
the hypothetically-correct jury charge analysis.  Malik v. State, 953 S.W.2d 234, 240
(Tex. Crim. App. 1997).  In order to
prove its case under Section 38.04 of the Texas Penal Code, the State was
obligated to prove that (1) Baines, (2) intentionally fled, (3) from a
person that he knew was a peace officer, (4) who was attempting lawfully to
arrest or detain him.  In order to raise
the offense from the level of a class A misdemeanor to a state jail felony, it
was necessary in this case to prove that Baines employed a vehicle in his
attempt to flee.  The State offered
evidence of all of these things.

            In
reviewing the evidence for sufficiency, we consider the evidence in the light
most favorable to the verdict to determine whether any rational trier of fact
could have found the essential elements of the crime beyond a reasonable
doubt.  Jackson v. Virginia, 443 U.S. 307, 31819 (1979).  

            Section
38.04 of the Texas Penal Code criminalizes the act of intentionally fleeing
from a person the actor knows is a peace officer attempting to lawfully arrest
or detain him.  Tex. Penal Code Ann. § 38.04 (Vernon Supp. 2010).  Baines claims the evidence is insufficient to
establish that he fled from Jackson.  

            Baines
argues the length and speed of the chase establishes he did not intentionally
flee Jackson.  We note that a chase of
this length and speed would not normally be considered evading detention.  However, the length and speed of the chase
are not the determinative factors in evaluating whether Baines evaded
detention.  The relevant inquiry is
whether there was an attempt to flee or delay the detention.  The length and speed of the chase are factors
in considering whether there was an attempt to escape, but are not
determinative by themselves.  As this
Court has noted, under the law, fleeing slowly is still fleeing.  Mayfield
v. State, 219 S.W.3d 538, 541 (Tex. App.Texarkana 2007, no pet.).  The State introduced evidence that while
driving around the block, Baines discarded something and marihuana was
discovered near the location where Baines discarded something.  On cross-examination, Baines admitted that he
threw something out of his vehicle and that [i]t was said to be marijuana.  A reasonable person could conclude Baines was
fleeing detention while he considered what he might do with the contraband in
his vehicle.   

            Alternatively,
Baines argues the evidence is insufficient to support the conclusion his
conduct was not justified.  A persons
actions are justified under the defense of necessity if he reasonably believed
his conduct was immediately necessary to avoid imminent harm, the desirability
and urgency of avoiding the harm clearly outweighed, according to ordinary
standards of reasonableness, the harm sought to be prevented, and no
legislative purpose existed to exclude the defense.  Tex.
Penal Code Ann. § 9.22 (Vernon 2003). 
In raising a justification, a defendant bears the burden of production,
which requires the production of some evidence that supports the particular
justification.  Zuliani v. State, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003); Saxton v. State, 804 S.W.2d 910, 913
(Tex. Crim. App. 1991).  Once the
defendant produces some evidence, the State then bears the burden of persuasion
to disprove the raised justification beyond a reasonable doubt.  Zuliani,
97 S.W.3d at 594; Saxton, 804 S.W.2d
at 91314. 

            Baines
admitted he did not stop immediately after Jackson had signaled him to stop,
but he argued his conduct was justified, based on the defense of
necessity.  Baines testified at trial as
follows:  

I sit through the light twice, and it didnt
change.  The third time when it did
change, I proceeded.  And I guess about
halfway through the block, the officer turned his lights on.

 

            The
only place that I knew where someone knew me was right there on - - I guess its
Church Street.  And I was already passed [sic]
it, so I didnt want to stop and put myself in a vulnerable position, because
in previous cases I hadnt been treated fairly; and I just wanted there to be
witnesses instead of my word against the officers.

 

Baines later explained, in 1994,
he was imprisoned for something he did not do and later on they found out who did
it, and they didnt say anything to me . . . . 
When asked if an officer had ever committed an act of violence against
him, Baines testified, Officer David Womack stuck a gun to my head.  On cross-examination, the State, referencing
some statements Baines made on the in-car video, asked Baines if he was concerned
that you were wanted for the murder at that time.  Baines responded, No, sir.  No, sir. 
I wasnt concerned that I was wanted for the murder.  I just knew I wouldnt get fairly treated because
of that murder situation.[3]  According to Baines, the house he eventually
stopped at, 313 Church Street, was the house of a friend where it was
understood I was coming back to spend the night.  Baines testified he had already passed his
friends house when Jackson activated his lights.  

            A
reasonable person could have rejected Bainess defense of necessity.  During the chase, Baines passed a well-lit
parking lot.  Baines could have stopped
at that parking lot.  A reasonable person
could have concluded Baines was fleeing detention while he considered what he
might do with the contraband in his vehicle, rather than out of fear of the
police.  In addition, Baines admitted
that he had called the police earlier that day to report a stolen car.  Bainess report to the police undermines his
testimony that he evaded detention because he feared the police.  Further, a reasonable person could have
concluded that an ordinary and prudent person in the same circumstances would
not hold the same belief that flight was immediately necessary.  A reasonable person could have concluded the
State met its burden of persuasion.  The
evidence is sufficient to support the trial courts rejection of Bainess
defense of necessity.

IV.       This Court Lacks
Jurisdiction Over the States Cross-Appeal

            In
its brief, the State raises a cross-issue complaining that Bainess sentence is
an illegal sentence.  We note the State
failed to file a notice of appeal to perfect its cross-appeal.  Thus, we must first determine whether we have
jurisdiction to entertain the States cross-appeal.[4]  The issue of whether a State is required to
file a separate notice of appeal in order to bring a cross-appeal has not yet
been decided by the Texas Court of Criminal Appeals.  See
Mizell v. State, 119 S.W.3d 804, 807 (Tex. Crim. App. 2003) (declining to
decide whether notice of appeal is required for State to bring
cross-appeal).  

            The
United States Supreme Court has held the government may not bring an appeal
without express statutory authority.  United States v. Sanges, 144 U.S. 310,
31318 (1892); State v. Moreno, 807
S.W.2d 327, 330 (Tex. Crim. App. 1991); State
v. Aguilar, 260 S.W.3d 169, 171 (Tex. App.Houston [1st Dist.] 2008, no
pet.).  The right of the State to file an
appeal is strictly circumscribed by Article 44.01 of the Texas Code of Criminal
Procedure, which provides as follows in pertinent part:

            (a)        The state is entitled to appeal an order
of a court in a criminal case if the order:

 

            (1)        dismisses an indictment, information, or
complaint or any portion of an indictment, information, or complaint;

 

            (2)        arrests or modifies a judgment;

 

            (3)        grants a new trial;

 

            (4)        sustains a claim of former jeopardy;

 

            (5)        grants a motion to suppress evidence, a
confession, or an admission, if jeopardy has not attached in the case and if
the prosecuting attorney certifies to the trial court that the appeal is not
taken for the purpose of delay and that the evidence, confession, or admission
is of substantial importance in the case; or

 

            (6)        is issued under Chapter 64.

 

            (b)        The state is entitled to appeal a
sentence in a case on the ground that the sentence is illegal.

 

            (c)        The state is entitled to appeal a ruling
on a question of law if the defendant is convicted in the case and appeals the
judgment.

 

            (d)       The prosecuting attorney may not make an
appeal under Subsection (a) or (b) of this article later than the 20th day
after the date on which the order, ruling, or sentence to be appealed is
entered by the court.

 

            .
. . .

 

            (i)         In this article, prosecuting attorney
means the county attorney, district attorney, or criminal district attorney who
has the primary responsibility of prosecuting cases in the court hearing the
case and does not include an assistant prosecuting attorney. . . .

 

Tex.
Code Crim. Proc. Ann. art. 44.01 (Vernon Supp. 2010).  The Texas Court of Criminal Appeals, noting
that Article 44.01 specifically excluded an assistant prosecuting attorney,
has interpreted Article 44.01 as requiring the prosecuting attorney to
personally authorize specific appeals filed on behalf of the State.  State
v. Boseman, 830 S.W.2d 588, 591 (Tex. Crim. App. 1992).

            In
addition, the Texas Rules of Appellate Procedure provide additional
requirements that the State must meet. 
Rule 25.2 provides as follows in pertinent part:

(a)        Rights to Appeal.

 

            (1)        Of the
State.  The State is entitled to appeal a
courts order in a criminal case as provided by Code of Criminal Procedure
article 44.01.

 

            .
. . .

 

(b)        Perfection of Appeal.  In a criminal case, appeal is perfected by
timely filing a sufficient notice of appeal. . . .

 

(c)        Form and Sufficiency of
Notice.

 

            (1)        Notice
must be given in writing and filed with the trial court
clerk. . . .

 

            (2)        Notice is sufficient if it shows the
partys desire to appeal from the judgment or other appealable order, and, if
the State is the appellant, the notice complies with Code of Criminal Procedure
article 44.01.

 

Tex.
R. App. P. 25.2.  Rule 26.2(b),
which governs the time to perfect an appeal by the State, provides that [t]he
notice of appeal must be filed within 20 days after the day the trial court
enters the order, ruling, or sentence to be appealed.  Tex.
R. App. P. 26.2(b).  

            The
Austin, Dallas, Beaumont, and Fort Worth Courts of Appeals have each held that
the State must file a notice of appeal in order to perfect a cross-appeal.  See,
e.g., Davis v. State, 144 S.W.3d
192, 202 (Tex. App.Fort Worth 2004, pet. refd); Strong v. State, 87 S.W.3d 206, 212 (Tex. App.Dallas 2002, pet.
refd); Ganesan v. State, 45 S.W.3d
197, 20304 (Tex. App.Austin 2001, pet. refd); Malley v. State, 9 S.W.3d 925, 927 (Tex. App.Beaumont 2000, pet.
refd); see also Rodriguez v. State,
939 S.W.2d 211, 219 (Tex. App.Austin 1997, no pet.).

            Contrarily,
the Fourteenth District Court of Appeals has held that a notice of appeal is
not a predicate for the State to file a cross-appeal, irrespective of from
which subsection the appeal is pursued.  McClinton v. State, 38 S.W.3d 747,
75051 (Tex. App.Houston [14th Dist.] 2001), pet. dismd, improvidently granted, 121 S.W.3d 768 (Tex. Crim. App.
2003).  The court stated: 

Under the civil appellate rules, this court would
not be authorized to grant the State relief because the State did not file a
notice of appeal.  Tex. R. App. P. 25.1(c). However, the
criminal analog has no such provision.  See Tex.
R. App. P. 25.2(a).

 

McClinton, 38 S.W.3d at 750. 
The Fourteenth District cited State
v. Clemmer, 999 S.W.2d 903, 905 (Tex. App.Amarillo 1999, pet. refd), as
additional authority, noting the Amarillo Court of Appeals had elected to
address the states complaint when the State clearly expressed the error
alleged, the authority relied upon, and the relief sought[.]  McClinton,
38 S.W.3d at 750 (quoting Clemmer,
999 S.W.2d at 905).   

            We
disagree with the Fourteenth District that the differences in language between
Rules 25.1 and 25.2 suggest a notice of appeal is not required for a
cross-appeal in a criminal case.  Rather,
both rules state in absolute terms that an appeal is perfected upon the filing
of a notice of appeal.  The fact that the
civil rules describe this basic principle in more detail does not suggest that
the criminal rules contain an exception for cross-appeals.  Further, the discussion contained in Clemmer concerns whether the court could
address unassigned error argued by the State, but not properly presented to the
court in an issue presented.  Clemmer, 999 S.W.2d at 905.  Clemmer
does not contain any discussion about whether the State must file a notice of
appeal to bring a cross-appeal.  See id.  There is nothing in the Texas Rules of
Appellate Procedure or in Article 44.01 which specifically provides that the
State is exempt from filing a notice of appeal when bringing an appeal under Article
44.01(b).[5]  We agree with the majority of the other Texas
Courts of Appeals that have ruled on the issue that the State is required to
file a notice of appeal to perfect a cross-appeal under Article 44.01(b).  We lack jurisdiction to entertain the States
cross-appeal.

V.        The Sentence Is Not an
Illegal Sentence

            The
Texas Court of Criminal Appeals has held a court with jurisdiction over a
criminal case has inherent authority to notice and correct an illegal
sentence.  See Mizell, 119 S.W.3d at
807.  An illegal sentence cannot be
waived and can be challenged at any time. 
Ex parte Pena, 71 S.W.3d 336,
339 (Tex. Crim. App. 2002).  In its
brief, the State argues that the sentence assessed by the trial court is an illegal
sentence.  According to the State, the
sentence is an illegal sentence because the trial court failed to make a
finding on the enhancement allegations and erred in sentencing Baines under
Section 12.44 of the Texas Penal Code.  See Tex.
Penal Code Ann. §§ 12.42, 12.44 (Vernon Supp. 2010).  

            The
Texas Court of Criminal Appeals has held a sentence is not an illegal sentence
merely because there is no finding on the enhancement paragraphs.  In Harris
v. State, the trial court failed to make a finding on the enhancements and
sentenced the defendant within the range of the unenhanced offense.  153 S.W.3d 394, 398 (Tex. Crim. App.
2005).  The following day, the trial
court recalled the case, found the enhancement to be true, and assessed a more
lengthy sentence.  Id.  The Texas Court of
Criminal Appeals held that the first sentence was lawfully assessed.  See id.
(concluding second sentence did not qualify as a nunc pro tunc).  Thus, the absence of a finding on the
enhancements does not render the sentence an illegal sentence.[6]

            The
States remaining complaint is that the trial court erred in sentencing Baines
under Section 12.44, which permits a trial court to assess punishment based on
the class A misdemeanor punishment range. 
See Tex. Penal Code Ann. § 12.44.  First, we note that the punishment assessed
was within the punishment range of a state-jail felony.[7]  Thus, the sentence assessed would not be an illegal
sentence even if the trial court had chosen not to exercise its discretion to
sentence Baines under Section 12.44. 
Section 12.44 provides two criteria to guide the trial court in
exercising its discretionthe gravity and circumstances of the felony
committed and the history, character, and rehabilitative needs of the
defendant.  Tex. Penal Code Ann. § 12.44.  Although Baines has several criminal
convictions, the gravity and circumstances of the offense support the trial
courts decision to exercise its discretion to sentence Baines under Section
12.44.  The trial court abuses its
discretion when it acts without reference to any guiding rules and principles,
or acts in a manner that is arbitrary or capricious.  Lam v.
State, 25 S.W.3d 233, 23637 (Tex. App.San Antonio 2000, no pet.) (citing
Montgomery v. State, 810 S.W.2d 372,
392 (Tex. Crim. App. 1990)).  The trial
court did not abuse its discretion in sentencing Baines under Section
12.44.  

            We
note the Texas Court of Criminal Appeals has held that a trial court does abuse
its discretion if it sentences a defendant under Section 12.44 when it has found
enhancement allegations to be true, thereby increasing the punishment range
under Section 12.42(d).  State v. Allen, 865 S.W.2d 472, 473
(Tex. Crim. App. 1993).  We further note
that the Texas Court of Criminal Appeals has held a trial court errs in ignoring
in an adjudication proceeding enhancement allegations that previously have been
found to be true.  State v. Kersh, 127 S.W.3d 775, 776 (Tex. Crim. App. 2004).  This case is distinguishable from Allen and Kersh because in this case the trial court, without objection,
explicitly did not make a finding on the enhancement allegations.  Thus, unlike Allen or Kersh, the habitual offender statute does not apply to
Baines.  As discussed above, the absence
of a finding on the enhancement allegations does not render the sentence an illegal
sentence.  Bainess sentence is not an illegal
sentence.

            For the reasons stated, we affirm. 

 

 

 

                                                                        Bailey
C. Moseley

                                                                        Justice

 

Date Submitted:          August 12, 2010

Date Decided:             November 3, 2010

 

Publish











[1]Originally
appealed to the Twelfth Court of Appeals, this case was transferred to this
Court by the Texas Supreme Court pursuant to its docket equalization efforts.  See Tex. Govt Code Ann. § 73.001 (Vernon
2005).  We are unaware of any conflict
between precedent of the Twelfth Court of Appeals and that of this Court on any
relevant issue.  See Tex. R. App. P.
41.3.





[2]In
the Brooks plurality opinion, the Texas Court of Criminal Appeals found
no meaningful distinction between the Jackson v. Virginia legal-sufficiency
standard and the Clewis [v.
State, 922 S.W.2d 126 (Tex. Crim. App. 1996)], factual-sufficiency
standard, and these two standards have become indistinguishable.  Brooks
v. State, No. PD-0210-09, 2010 WL 3894613, at *8 (Tex. Crim. App. Oct. 6,
2010) (4-1-4 decision).  Further, a proper application of the Jackson
v. Virginia legal sufficiency standard is as exacting a standard as any
factual sufficiency standard.  See id. at *11.  In a
concurring opinion, Judge Cochran pointed out that the United States Supreme
Court has rejected a legal sufficiency test that requires a finding that no
evidence supports the verdict because it affords inadequate protection against
potential misapplication of the reasonable doubt standard in criminal
cases.  Id. at *16 (Cochran, J., concurring).  Rather
than meeting a mere no evidence test, legal sufficiency is judged not by the
quantity of evidence, but by the quality of the evidence and the level of
certainty it engenders in the fact-finders mind.  Id. at *17.  Under the authority of Brooks, we do not address the defendants challenge to the factual
sufficiency of the evidence.  





[3]The
record is rather vague concerning what the murder situation concerned.





[4]Subject-matter
jurisdiction is a threshold matter which an appellate court must address, sua sponte, if not raised by the
parties, before deciding substantive issues.  State v. Roberts, 940
S.W.2d 655, 657 (Tex. Crim. App. 1996),  overruled on other grounds by
State v. Medrano, 67 S.W.3d 892, 903 (Tex. Crim. App. 2002); Garcia v.
Dial, 596 S.W.2d 524, 527 (Tex. Crim. App. [Panel Op.] 1980); Neugebauer
v. State, 266 S.W.3d 137, 139 (Tex. App.Amarillo 2008, no pet.); McCarver
v. State, 257 S.W.3d 512, 513 (Tex. App.Texarkana 2008, no pet.).





[5]The
San Antonio Court of Appeals, in Mizell
v. State, 70 S.W.3d 156, 163 (Tex. App.San Antonio 2001), affd, 119 S.W.3d 804, held a notice of
appeal is not required when the State is appealing a ruling on a question of
law under Article 44.01(c) because Article 44.01(d) is restricted to Article
44.01(a) and Article 44.01(b).  The
Austin and Dallas Court of Appeals have disagreed and held a notice of appeal
is required even when an appeal is brought pursuant to Article 44.01(c).  Ganesan,
45 S.W.3d at 20304 (holding notice of appeal required under Article 44.01(c));
Strong v. State, 87 S.W.3d 206, 212
(Tex. App.Dallas 2002, pet. refd) (same). 
Because the State has unambiguously claimed its appeal concerns an
illegal sentence, an appeal authorized by Article 44.01(b), Mizell is clearly distinguishable from
this case.  It is not necessary for this
Court to decide whether a notice of appeal is required for an appeal brought
under Article 44.01(c).





[6]The
trial court is not bound to accept the States evidence and find the
enhancement allegations true.  See Harris, 153 S.W.3d at 397.  The State argues that Harris is distinguishable from this case because the defendant in Harris pled not true while the defendant
in this case pled true.  However, this
argument concerns the States claim that the trial court erred in explicitly
refusing to make a finding on the enhancements making the sentence
illegal.  The State failed to preserve
error on this issue.  As the Texas Court
of Criminal Appeals has noted, complaints concerning the procedure leading to
the assessment of punishment are not synonymous with a complaint that the
sentence is illegal.  State v. Baize, 981 S.W.2d 204, 206
(Tex. Crim. App. 1998) (State could not appeal untimely election for jury to
assess his punishment as an illegal sentence); see State v. Ross, 953 S.W.2d 748, 752 (Tex. Crim. App. 1997)
(concluding State could not appeal absence of an affirmative deadly weapon
finding as an illegal sentence). 
Except for complaints involving systemic (or absolute) requirements, or
rights that are waivable only, . . . all other complaints, whether constitutional,
statutory, or otherwise, are forfeited by failure to comply with Rule
33.1(a).  Mendez v. State, 138 S.W.3d 334, 342 (Tex. Crim. App. 2004).   The Texas Court of Criminal Appeals has
noted errors that are subject to procedural default may not be remedied by the
appellate court as unassigned error unless the error was in fact preserved in
the trial court.  Sanchez v. State, 209 S.W.3d 117, 121 (Tex. Crim. App. 2006).  When the State asserts error, the burden of
preserving error for appellate review rests on the State.  State
v. Boyd, 202 S.W.3d 393, 404 (Tex. App.Dallas 2006, pet. refd).  The State made no objection concerning the
trial courts explicit refusal to make a finding on the enhancements.  The State has failed to preserve the error,
if any, of the trial courts explicit refusal to make a finding on enhancements
for appellate review.  See Tex.
R. App. P. 33.1.  While we must
consider the absence of a finding, we are not considering whether the trial
court erred in failing to make a finding.

 





[7]An
individual convicted of a state-jail felony may be imprisoned for a term of not
more than two years or less than 180 days. 
Tex. Penal Code Ann. § 12.35(c)
(Vernon Supp. 2010).  Thus, even if the
trial court erred in sentencing Baines based on the range for a class A
misdemeanor, the sentence would not be an illegal sentence because it is
within the punishment range of a state-jail felony.